**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| DONNA M. JETER,<br><br>             *Plaintiff,*<br><br>      v.<br><br>FEDERAL BUREAU OF<br>INVESTIGATION,<br><br>             *Defendant.* | Civil Action No. 25‑2275 (SLS)<br>Judge Sparkle L. Sooknanan |

<u>**MEMORANDUM OPINION**</u>

Donna Jeter started her career at the Federal Bureau of Investigation (FBI) in 1991. In 2017, she took on a new role as a Supervisory Management Program Analyst. A little more than a year later, Ms. Jeter resigned after the FBI indefinitely suspended her. She sued the FBI, alleging that her supervisors mistreated her in the lead-up to her resignation. The FBI moved to dismiss Ms. Jeter's Complaint under Federal Rules of Civil Procedure 8 and 12(b)(6). The Court is sympathetic to Ms. Jeter's belief that she was treated unfairly by her supervisors, particularly given her twenty-seven years of service to the FBI. But because she fails to state plausible claims for relief, the Court must grant the FBI's motion and dismiss Ms. Jeter's Title VII claims.

**BACKGROUND**

**A.      Factual Background**

The Court draws the facts, accepted as true, from the Plaintiff's Complaint. *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023). Because Ms. Jeter is proceeding pro se, the Court considers the Complaint "in light of all filings, including filings responsive to [the] motion to dismiss," *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152

(D.C. Cir. 2015) (per curiam) (cleaned up)—which includes a "Statement of Claim" (SOC), ECF No. 3, that Ms. Jeter filed about two weeks after her Complaint, and her Opposition to the FBI's Motion to Dismiss, ECF No. 12.

The events giving rise to this case are not completely clear. Ms. Jeter—who identifies as "Native American," Opp'n 3, ECF No. 12—began her career at the FBI in October 1991, SOC 11. It appears that in April 2017, she accepted a promotion to become a Supervisory Management Program Analyst. SOC 1. Her supervisors were Acting Assistant Section Chief William Taylor and Section Chief Mary Jo Thomas. *Id.*

Ms. Jeter's rocky relationship with Ms. Thomas began soon after her promotion. In May 2017, Ms. Thomas directed Ms. Jeter to pick a Management Program Analyst—"she didn't care which one"—to propose to be fired. *Id.* Ms. Thomas allegedly made this request because she wanted to hire a friend of hers. *Id.* And Ms. Thomas threatened to put Ms. Jeter on a performance improvement plan if she declined. *Id.*

Over the next several months, tensions remained high. On one occasion, Ms. Thomas told Ms. Jeter that she wanted the Management Program Analysts to clean the Sensitive Compartmented Information Facility (SCIF) because they were "fat." SOC 2. When Ms. Jeter said that the comment was inappropriate, Ms. Thomas responded: "What are they going to do about it, put an [Equal Employment Opportunity (EEO)] on me, I'm white and they are black." *Id.* Ms. Thomas then "scream[ed] that 'She is a white catholic.'" *Id.* In another incident, Ms. Thomas asked why certain Management Program Analysts were on family and medical leave. SOC 3. According to Ms. Jeter, "[s]ection employees started to notice that the [Management Program Analysts] appear[ed] to be targeted, and even started to tell them this looks discriminatory . . . as they are a group of minority women." *Id.*

In November 2017, Ms. Thomas gave Ms. Jeter a "Minimal Successful" rating on her performance review. SOC 6. It was the worst rating that Ms. Jeter had ever received in her long employment at the FBI. *Id.*

Around that time, Ms. Jeter alleges that she "was informed that William Taylor in retaliation for learning he was allowing Special Agents to claim time not worked, had submitted [her] to [the Office of Professional Responsibility (OPR)] for an inquiry." *Id.* She similarly alleges that she "contacted EEO and [her] EEO counselor did an informal complaint. That is when the [Assistant Special Agent in Charge Kevin] Moore started to target and harass [her] just like [Ms.] Thomas was." *Id.*

At the beginning of 2018, Ms. Jeter noticed some ways in which she was treated differently than Ms. Thomas's Executive Assistant, Christy, who was "Caucasian."[1] SOC 7. When Christy was in the office, she was permitted to leave the office's front door open. *Id.* But when Christy was gone, the door had to be shut and Ms. Jeter "was to get up and get it everytime [sic] someone knocked to come in the office which was every 5 minutes." *Id.* Christy was "allowed to come in at 9 am and sign in for 7:30," whereas Ms. Jeter was "charged AWOL [for] being over a minute late." *Id.* Ms. Jeter stepped down as a Supervisory Management Program Analyst in March 2018, returning to her prior role as a Management Program Analyst. SOC 8.

In the months leading up to Ms. Jeter's resignation from the FBI, supervisors expressed concerns about her timeliness and absences from work. In May 2018, Ms. Jeter was absent from work after experiencing a medical emergency. SOC 9. The next day, after more medical issues, Ms. Jeter arrived late for work. *Id.* Upon arriving, Mr. Moore gave her "a paper that ha[d] the rules

---

[1] Ms. Jeter does not allege Christy's last name, and the Statement of Claim sometimes refers to her as "Cristy."

for AWOL." *Id.* Ms. Jeter "refused to sign it and told him he was targeting [her]." *Id.* Several days later, Ms. Jeter was admitted to the emergency room and underwent surgery. *Id.* In the following weeks, she received calls from several people at the FBI and "was placed on AWOL until [she could] prove [she] had the surgery or provide[d] them with [her] hospital papers." *Id.*

On June 22, 2018, Ms. Jeter was suspended indefinitely. SOC 10. She decided to resign, feeling that she "had no other choice but to do a 'constructive discharge.'" *Id.*

### B.    Procedural Background

Ms. Jeter sued the FBI in July 2025. Her Complaint does not allege any facts, nor does it state the legal basis for her claims. *See* Compl., ECF No. 1. About two weeks after she filed her Complaint, she filed a document titled "Statement of Claim" that alleges the facts described above. *See* ECF No. 3. The FBI has moved to dismiss Ms. Jeter's Complaint under Federal Rules of Civil Procedure 8 and 12(b)(6); in the alternative, it moves for summary judgment. *See* Mot., ECF No. 8. That motion is fully briefed and ripe for review. *See* Opp'n; Reply, ECF No. 13.

### LEGAL STANDARD

Under Rule 12(b)(6), a court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing a motion to dismiss under Rule 12(b)(6), courts "must construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)). But courts need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint. *See Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court must "liberally construe[]" a pro se litigant's complaint and

"consider [the] complaint in light of all filings." *Ho v. Garland*, 106 F.4th 47, 50 (D.C. Cir. 2024) (cleaned up). "Even a *pro se* complainant, however, must plead factual matter that permits the court to infer more than the mere possibility of misconduct." *Mazza v. Verizon Wash. DC, Inc*, 852 F. Supp. 2d 28, 33 (D.D.C. 2012) (cleaned up).

## DISCUSSION

The nature of Ms. Jeter's claims is hard to discern. The FBI interprets Ms. Jeter's Complaint as bringing claims under Title VII of the Civil Rights Act of 1964—specifically, a race-discrimination claim, a retaliation claim, and a hostile work environment claim. Mot. 1. In opposing dismissal, Ms. Jeter adopts the FBI's framing and argues that she has adequately pled these three claims under Title VII. *See* Opp'n 1. This Court will follow the Parties' lead and discuss whether Ms. Jeter's filings plausibly state a claim under any of those theories. For the reasons below, they do not and must be dismissed.

### A.    Race Discrimination

"Title VII makes it unlawful for an employer 'to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race[.]'" *Muldrow v. City of St. Louis*, 601 U.S. 346, 354 (2024) (quoting 42 U.S.C. § 2000e–2(a)(1)). "The two essential elements" for a race-discrimination claim under Title VII "are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race." *Shanks v. Int'l Union of Bricklayers*, 134 F.4th 585, 596 (D.C. Cir. 2025) (cleaned up). To survive a motion to dismiss, a complaint "must raise an inference 'that race . . . was *a motivating factor* for any employment practice, even though other factors also motivated the practice.'" *Id.* (quoting 42 U.S.C. § 2000e–2(m)). Here, Ms. Jeter's race-discrimination claim must be dismissed.

As an initial matter, Ms. Jeter does not identify the alleged adverse employment action or actions that support her race-discrimination claim. Her indefinite suspension counts as such an action. *See Muldrow*, 601 U.S. at 354 (explaining that decisions implicating "the what, where, and when" of an individual's employment affect the employment's terms and conditions). And she may also be relying on Ms. Thomas giving her an unfavorable performance review or her supervisors designating her AWOL on several occasions. *See* SOC 6, 8–9.

The problem for Ms. Jeter is that her filings do not allege facts raising a plausible inference that her race motivated her supervisors to take these actions. Most importantly, her filings affirmatively attribute the alleged harsh treatment by her superiors to motivations other than race. For instance, she alleges that when she refused to resign or propose a colleague for dismissal, Ms. Thomas threatened to give her a bad performance review because Ms. Thomas wanted to "bring her friend onboard." SOC 1. Similarly, Ms. Jeter's filings appear to connect her AWOL designations and indefinite suspension to medical emergencies she experienced, not her race. *See* SOC 9 ("I started hemorrhaging again . . . this caused me to ride a later train to work. I got to my desk at 8:30 and ASC Moore was standing nearby waiting for me to come in the office to give me a paper that has the rules for AWOL[.]"); *id.* ("[M]y Unit Chief Ben Pulz, informed me that I was being put on AWOL, because the CPC Front Office (Thomas, and Moore) wanted it like that and because the emergency surgery was not pre-approved."); Opp'n 5 ("Plaintiff was disciplined for lateness caused by medical emergencies and disability." (boldface omitted)). Although Ms. Jeter may have felt that her supervisors' conduct was "offensive and shameful," her filings do not allege that their actions were "because of [her] race." *See Strong v. Fort Myer Constr. Corp.*, No. 25-cv-1011, 2025 WL 2643457, at *3 (D.D.C. Sep. 15, 2025); *Zano v. McDonough*, No. 22-cv-2748, 2024 WL 2699976, at *6 (D.D.C. May 24, 2024) ("[W]hile the plaintiff alleges that her

supervisors were discriminatory in their treatment of her, she fails to provide any factual information linking the alleged adverse actions to her race[.]").

To be sure, her Statement of Claim references race a couple times. First, after Ms. Jeter chided Ms. Thomas for making inappropriate comments about other employees' weight, Ms. Thomas allegedly responded: "What are they going to do about it, put an EEO on me, I'm white and they are black," and then "scream[ed] that 'She is a white catholic.'" SOC 2. But Ms. Jeter's filings do not connect these statements to any of the actions that her supervisors allegedly took against her.

The Statement of Claim also mentions race in connection with Ms. Thomas's Executive Assistant, Christy. According to Ms. Jeter, Christy—who was "Caucasian"—was permitted to leave the office's front door open; but when Christy was out, the door remained closed, and Ms. Jeter had to go open it for visitors. SOC 7. And Christy was "allowed to come in at 9 am and sign in for 7:30," whereas Ms. Jeter was "charged AWOL [for] being over a minute late." *Id.*

It is true that in the absence of direct evidence of discrimination, a plaintiff can survive a motion to dismiss by "track[ing] the following framework: the plaintiff must allege that (1) [she] is part of a protected class under Title VII, (2) [she] suffered a cognizable adverse employment action, and (3) the action gives rise to an inference of discrimination." *Liu v. Georgetown Univ.*, No. 22-cv-157, 2024 WL 4362128, at *8 (D.D.C. Sep. 30, 2024) (cleaned up). And "[o]ne way a plaintiff can create 'an inference of discrimination' is 'by demonstrating that she was treated differently from similarly situated employees who are not part of the protected class.'" *Id.* at *9 (quoting *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005)). "But the key to this inquiry is that the other [employee] must be similarly situated[]—*i.e.*, all of the relevant aspects of the plaintiff's employment situation were nearly identical to those of the other" employee. *Stanford v.*

7

*Howard Univ.*, No. 23-cv-3041, 2025 WL 3062907, at *3 (D.D.C. Nov. 3, 2025) (cleaned up). Here, Ms. Jeter's allegations about Christy do not suffice. Christy was an Executive Assistant, whereas Ms. Jeter was a Supervisory Management Program Analyst. And Ms. Jeter's filings do not allege whether they shared similar hours or job responsibilities. Thus, a comparison between the supervisors' treatment of Ms. Jeter and Christy is insufficient to save this claim. *See Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999) ("[T]wo EPA employees with similar job descriptions, one a GS–12 and the other a GS–13, were not similarly situated," in part because "the GS–13 performed several duties that the GS–12 (the plaintiff) did not." (characterizing *Barbour v. Browner*, 181 F.3d 1342 (D.C. Cir. 1999))).

In sum, Ms. Jeter's filings do not plausibly allege that she suffered an adverse employment action that was motivated by her race. The Court must dismiss this claim.

## B.    Retaliation

Next up is Ms. Jeter's retaliation claim. Title VII makes it unlawful to discriminate against an employee "because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). "In order to establish a prima facie case of retaliation, a plaintiff must show that he or she '(1) engaged in a statutorily protected activity; (2) suffered an adverse employment action; and (3) there is a causal connection between the two.'" *Shipman v. Nat'l R.R. Passenger Corp. (Amtrak)*, 241 F. Supp. 3d 114, 121 (D.D.C. 2017) (quoting *Taylor v. Small*, 350 F.3d 1286, 1292 (D.C. Cir. 2003)).

Ms. Jeter does not clearly identify the statutorily protected activity that supports her retaliation claim. She says that she "contacted EEO and [her] EEO counselor did an informal

8

complaint," but she does not describe what she contacted the counselor about. SOC 6; *see Arias v. Marriott Int'l, Inc.*, 217 F. Supp. 3d 189, 195–96 (D.D.C. 2016) ("Protected activity includes having 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' o*n the basis of discrimination under these statutes.*" (emphasis added) (quoting *Jones v. Billington*, 12 F. Supp. 2d 1, 13 (D.D.C. 1997))). Ms. Jeter also alleges that she chided Ms. Thomas for making inappropriate comments—but these comments focused more on the employees' weight than their race. *See* SOC 2; *Wang v. Wash. Metro. Area Transit Auth.*, 206 F. Supp. 3d 46, 76 (D.D.C. 2016) (explaining that Title VII "protects a broad range of informal actions or statements that employees make in resistance to actions they reasonably perceive to be discriminatory").

Even assuming that Ms. Jeter has sufficiently alleged that she engaged in activity protected by Title VII, her filings do not plausibly allege a causal connection between any such activity and an adverse employment action. Indeed, Ms. Jeter again affirmatively represents that her superiors acted against her for reasons other than her protected activity. She alleges that Mr. Taylor "submitted [her] to OPR for an inquiry" "in retaliation for learning he was allowing Special Agents to claim time not worked." SOC 6. And as mentioned above, she says that Ms. Thomas treated her poorly because she wanted "to bring her friend onboard." SOC 1.

The closest Ms. Jeter gets is her allegation that Mr. Moore "started to target and harass" her after she contacted an EEO counselor. SOC 6. Ultimately, this vague and conclusory statement is insufficient to support her claim of retaliation. *See Armstrong v. Dep't of Com.*, No. 24-cv-3185, 2026 WL 850325, at *2 (D.D.C. Mar. 27, 2026) (concluding that a plaintiff's "vague and conclusory allegations of wrongdoing without any specificity" were insufficient to survive a motion to dismiss because "his complaint [did] not clearly state . . . what discriminatory or

retaliatory acts were taken against him"). And Ms. Jeter's filings do not connect any specific alleged acts by Mr. Moore to Ms. Jeter having contacted the EEO counselor. Thus, because Ms. Jeter's filings do not plausibly allege a causal connection between any protected activity and any adverse employment action, the Court must dismiss her retaliation claim.

### C.        Hostile Work Environment

Finally, Ms. Jeter raises a hostile work environment claim. To state such a claim, a plaintiff must plausibly allege "that [her] employer subjected [her] to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Strong*, 2025 WL 2643457, at *4 (quoting *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008)). "To determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Id.* (quoting *Baloch*, 550 F.3d at 1201). Here, Ms. Jeter's claim fails for the simple reason that she has not adequately alleged that any of the inappropriate behavior she experienced was connected to her race or another protected characteristic. "Court[s] have 'routinely held that hostile behavior, no matter how unjustified or egregious, cannot support a claim of hostile work environment unless there exists some linkage between the hostile behavior and the plaintiff's membership in a protected class.'" *Jenkins v. District of Columbia*, 281 F. Supp. 3d 77, 88 (D.D.C. 2017) (quoting *Na'im v. Clinton*, 626 F. Supp. 2d 63, 73 (D.D.C. 2009)). And as explained above, Ms. Jeter has not plausibly alleged any connection between the behavior of her superiors and a characteristic protected by Title VII. This claim must be dismissed too.[2]

---

[2] The FBI perceives Ms. Jeter's filings as raising a constructive discharge claim as well, which it moves to dismiss. Mot. 18–20, ECF No. 8. Ms. Jeter does not address the FBI's argument in her Opposition, thus conceding it. *See Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F.

\*    \*    \*

The Court acknowledges that Ms. Jeter believes that she was treated unfairly at the FBI. Nevertheless, her filings do not state a claim for discrimination, retaliation, or a hostile work environment under Title VII. Those claims must be dismissed with prejudice.

The Court notes that Ms. Jeter's filings also reference the Family and Medical Leave Act (FMLA). In her Statement of Claim, she alleges that she submitted "FMLA papers" and "was granted 480 hours." SOC 9. She also filed a document—which appears to have been filled out by her doctor—stating that Ms. Jeter would be incapacitated due to a medical condition between May 30, 2018, and July 5, 2018. ECF No. 12-3 at 16. And in her Opposition, Ms. Jeter states that "[m]anagement attempted to charge [her] AWOL while she was on approved FMLA leave." Opp'n 3 (boldface omitted). In context, these references to FMLA leave appear to be intended to flesh out Ms. Jeter's Title VII claims, rather than to assert a claim under the FMLA. And in her Opposition, Ms. Jeter does not object to the FBI's argument that her Complaint rises or falls on her Title VII claims. *See Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."), *aff'd*, 98 F. App'x 8 (D.C. Cir. 2004).

---

Supp. 2d 15, 25 (D.D.C. 2003), *aff'd*, 98 F. App'x 8 (D.C. Cir. 2004). Even assuming that Ms. Jeter intended to raise such a claim, the Court agrees that it must be dismissed. To prevail on a constructive discharge claim, a plaintiff must prove, among other things, that "intentional discrimination existed." *Bajaj v. Turner*, 778 F. Supp. 3d 151, 192 (D.D.C. 2025) (quoting *Douglas-Slade v. LaHood*, 793 F. Supp. 2d 82, 102 (D.D.C. 2011)). For the reasons above, Ms. Jeter's filings do not plausibly allege intentional discrimination on the basis of a characteristic protected by Title VII.

Still, recognizing that Ms. Jeter is proceeding pro se, the Court will afford her an opportunity to amend her Complaint to assert any claim she intended to raise under the FMLA. Ms. Jeter must file any amended complaint by July 14, 2026. If Ms. Jeter chooses not to amend her Complaint, the Court will dismiss the operative Complaint, ECF No. 1, in its entirety.

## CONCLUSION

For the foregoing reasons, the Court grants the FBI's Motion to Dismiss, ECF No. 8. A separate order will issue.

_____

SPARKLE L. SOOKNANAN
United States District Judge

Date:   June 12, 2026